**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
Email: bgreenberg@litedepalma.com

*Attorney for Plaintiff*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID GLEASON, Individually and On Behalf of All Others Similarly Situated, | **Civil Action No.:** |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| AKERS BIOSCIENCES, INC., JOHN J. GORMALLY, and GARY M. RAUCH, | |
| *Defendants.* | |

Plaintiff David Gleason ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Akers Biosciences, Inc. ("Akers" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the

Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class defined in paragraph 49 below who purchased or otherwise acquired Akers securities between May 15, 2017 through June 5, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Akers Biosciences, Inc. develops, manufactures, and supplies rapid screening and testing products designed to deliver healthcare information to healthcare providers and consumers. The company also focuses on the development of proprietary platform technologies.

3.      Founded in 1989, Akers is headquartered in Thorofare, New Jersey, and its securities trade on the NASDAQ Capital Market ("NASDAQ") under the ticker symbol "AKER."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Akers was improperly recognizing revenue for the fiscal year ended December 31, 2017; (ii) Akers had downplayed weaknesses in its internal controls over financial reporting and failed to disclose the true extent of those weaknesses; and (iii) as a result, Defendants' statements about Akers' business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times

2

5.      On May 21, 2018, Akers disclosed in a Form 8-K filed with the SEC that it was unable to file its Form 10-Q with the SEC for the quarter ended March 31, 2018. Akers also disclosed that its continuing review of the "characterization of certain revenue recognition items . . . now includes certain transactions in previous quarters."

6.      On this news, shares of Akers fell $0.058 per share or over 8% to close at $0.599 per share on May 22, 2018, damaging investors.

7.      On May 29, 2018, before the market opened, Akers issued a press release stating that "Raymond F. Akers Jr., Ph.D has resigned as a director of the Company with immediate effect."

8.      On this news, shares of Akers fell $0.198 or over 33% to close at $0.391 per share on May 29, 2018.

9.      On June 1, 2018, the Company filed a Form 8-K with the SEC, stating that Raymond Akers "has not been fully cooperative" with the Company's review of certain revenue recognition items for prior quarters. The Form 8-K also contained as an exhibit a letter from Raymond Akers, which stated that Dr. Akers "resigned from the Board of Directors due to significant differences regarding the policies and practices of the Board of Directors, accounting and business practices of Management, and new Counsel."

10.     On June 5, 2018, the Company filed a Form 8-K/A with the SEC, which amended the Form 8-K filed with the SEC on June 1, 2018. The Form 8-K/A contained as an exhibit a letter on behalf of Raymond Akers, stating that the "8K regarding Ray is false, totally misleading[.]"

11.     On this news, shares of Akers fell $0.025 or over 5% to close at $0.46 per share on June 6, 2018.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

15.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Akers' principal executive offices are located within this Judicial District.

16.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

17.     Plaintiff is a citizen of Santa Clara County, California.  Plaintiff, as set forth in the attached Certification, acquired Akers' securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18.     Defendant Akers is incorporated in New Jersey, with principal executive offices located at 201 Grove Road, Thorofare, New Jersey 08086.   Akers securities trade on the NASDAQ under the ticker symbol "AKER."

19.     Defendant John J. Gormally ("Gormally") has served as the Company's Chief Executive Officer ("CEO") since November 16, 2015.

20.     Defendant Gary M. Rauch ("Rauch") has served as the Company's Vice President of Finance and Treasurer since February 2014.

21.     The Defendants referenced above in ¶¶ 19-20 are sometimes referred to herein as the "Individual Defendants."

22.     The Individual Defendants possessed the power and authority to control the contents of Akers' SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

23.     Akers Biosciences, Inc. develops, manufactures, and supplies rapid screening and testing products designed to deliver healthcare information to healthcare providers and consumers. The Company also focuses on the development of proprietary platform technologies.

24.     Dr. Raymond F. Akers, Jr., Ph.D. was a founder of the Company. He served in various capacities at the Company, including as Chief Scientific Director, Secretary, and a director.

25.     On April 11, 2017, the Company filed a Form 10-K with the SEC, which provided its year-end financial results and position for the fiscal year ended December 31, 2016 (the "2016 10-K"). The 2016 10-K was signed by Defendants Gormally and Rauch.

26.     The 2016 10-K stated that the Company "identified a material weakness in [its] controls related to segregation of duties and other immaterial weaknesses in several areas of data management and documentation."

27.     The 2016 10-K stated there were no changes in internal control over financial reporting that materially affected or were reasonably likely to materially affect the Company's internal control over financial reporting.

### Materially False and Misleading Statements Issued During the Class Period

28.     The Class Period begins on May 15, 2017, when Akers filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "1Q 2017 10-Q"). The 1Q 2017 10-Q was signed by Defendants Gormally and Rauch. The 1Q 2017 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Gormally and Rauch attesting to the

accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

29.     The 1Q 2017 10-Q stated the Company's disclosure controls and procedures were effective. The 1Q 2017 10-Q also provided that there were no changes in internal control over financial reporting that materially affected or were reasonably likely to materially affect the Company's internal control over financial reporting, stating in relevant part:

> ***(b) Changes in Internal Control over Financial Reporting.***
>
> There were no changes in our internal control over financial reporting, as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act, during our most recently completed fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

30.     On August 14, 2017, when Akers filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "2Q 2017 10-Q") with the SEC, which provided the Company's second quarter 2017 financial results and position. The 2Q 2017 10-Q was signed by Defendants Gormally and Rauch. The 2Q 2017 10-Q contained signed SOX certifications by Defendants Gormally and Rauch attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

31.     The 2Q 2017 10-Q stated the Company's disclosure controls and procedures were effective. The 2Q 2017 10-Q also provided that there were no changes in internal control over financial reporting that materially affected or were reasonably likely to materially affect the Company's internal control over financial reporting, stating in relevant part:

> ***(b) Changes in Internal Control over Financial Reporting.***
>
> There were no changes in our internal control over financial reporting, as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act, during our most recently completed fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

32.     On November 14, 2017, Akers filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2017 (the "3Q 2017 10-Q") with the SEC, which provided the Company's third quarter 2017 financial results and position. The 3Q 2017 10-Q was signed by Defendants Gormally and Rauch. The 3Q 2017 10-Q contained signed SOX certifications by Defendants Gormally and Rauch attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

33.     The 3Q 2017 10-Q stated the Company's disclosure controls and procedures were effective. The 3Q 2017 10-Q also provided that there were no changes in internal control over financial reporting that materially affected or were reasonably likely to materially affect the Company's internal control over financial reporting, stating in relevant part:

*(b) Changes in Internal Control over Financial Reporting.*

There were no changes in our internal control over financial reporting, as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act, during our most recently completed fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

34.     On April 3, 2018, Akers filed a Form NT 10-K with the SEC, disclosing that it was unable to timely file its Annual Report on Form 10-K for the period ended December 31, 2017 ("2017 10-K"). Specifically, the Company stated that it required "additional time to gather information and finalize its financial statements."

35.     That same day, the Company filed its 2017 10-K with the SEC, which provided the Company's financial and operating results for the quarter and fiscal year ended December 31, 2017. The 2017 10-K was signed by Defendants Gormally and Rauch. The 2017 10-K contained signed SOX certifications by Defendants Gormally and Rauch attesting to the accuracy of

financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

36.     In the 2017 10-K, the Company stated it had "identified a material weakness in our controls related to segregation of duties and other immaterial weaknesses in several areas of data management and documentation." The 2017 10-K also stated there were no changes in internal control over financial reporting that materially affected or were reasonably likely to materially affect the Company's internal control over financial reporting.

37.     The 2017 10-K provided the Company's revenue for the relevant period:

*Revenue*

The Company's total revenue for the year ended December 31, 2017 was $3,929,527, a 33% increase compared to the same period in 2016. The table below presents a summary of our sales by product line:

| Product Line | | Year Ended December 31, 2017 | | Year Ended December 31, 2016 | Percent Change |
|---|---|---|---|---|---|
| Particle ImmunoFiltration Assay ("PIFA") | $ | 2,232,684 | $ | 2,577,148 | (13)% |
| MicroParticle Catalyzed Biosensor ("MPC") | | 950,946 | | 282,516 | 237% |
| Rapid Enzymatic Assay ("REA") | | 133,848 | | - | -% |
| Other | | 562,049 | | 97,498 | 476% |
| Product Revenue Total | $ | 3,879,527 | $ | 2,957,162 | 31% |
| License & Service Fees | | 50,000 | | 3,750 | 1,233% |
| Total Revenue | $ | 3,929,527 | $ | 2,960,912 | 33% |

38.     The 2017 10-K stated the following about the Company recognizing revenue:

(k) Revenue Recognition

In accordance with FASB ASC 605, the Company recognizes revenue when (i) persuasive evidence of a customer or distributor arrangement exists, (ii) a retailer, distributor or wholesaler receives the goods and acceptance occurs, (iii) the price is fixed or determinable, and (iv) the collectability of the revenue is reasonably assured. Subject to these criteria, the Company recognizes revenue from product sales when title passes to the customer based on shipping terms. The Company typically does not accept returns nor offer charge backs or rebates except for

certain distributors. Revenue recorded is net of any discount, rebate or sales return. The accrual for estimated sales returns was $- as of December 31, 2017 and 2016.

The Company implemented a standard dealer cost model during the year ended December 31, 2016 which includes a provision for rebates to the distributors under limited circumstances. The Company established an accrual of $126,471 and $41,120, which is a reduction of revenue as of December 31, 2017 and 2016. Accounts receivable will be reduced when the rebates are applied by the customer. The Company recognized $372,664 and $471,949 during the years ended December 31, 2017 and 2016 for rebates, which is included as a reduction of product revenue in the Consolidated Statement of Operations and Comprehensive Loss.

License fee revenue is recognized on a straight-line basis over the term of the license agreement.

When the Company enters into arrangements that contain more than one deliverable, the Company allocates revenue to the separate elements under the arrangement based on their relative selling prices in accordance with FASB ASC 605-25.

39.    The statements referenced in ¶¶ 28-38 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Akers was improperly recognizing revenue for the fiscal year ended December 31, 2017; (ii) Akers had downplayed weaknesses in its internal controls over financial reporting and failed to disclose the true extent of those weaknesses; and (iii) as a result, Defendants' statements about Akers' business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times

**The Truth Begins to Emerge**

40.    On May 21, 2018, Akers disclosed in a Form 8-K filed with the SEC that it was unable to file its Form 10-Q with the SEC for the quarter ended March 31, 2018. Akers also

disclosed that its continuing review of the "characterization of certain revenue recognition items . . . now includes certain transactions in previous quarters." The Form 8-K stated, in relevant part:

> As previously disclosed, the Company has been reviewing the characterization of certain revenue recognition items for the quarter ended March 31, 2018. As this review is continuing and now includes certain transactions in previous quarters, the Company is unable to file its 10-Q for the quarter ended March 31, 2018 today. Following the completion of its review, which cannot be estimated, the Company will file its 10-Q for the quarter ended March 31, 2018 and make a determination as to whether it will need to revise, correct or restate the reports for any previous quarter or fiscal year.

41.     On this news, shares of Akers fell $0.058 per share or over 8% to close at $0.599 per share on May 22, 2018, damaging investors.

42.     On May 29, 2018, before the market opened, Akers issued a press release stating that "Raymond F. Akers Jr., Ph.D has resigned as a director of the Company with immediate effect."

43.     On this news, shares of Akers fell $0.198 or over 33% to close at $0.391 per share on May 29, 2018.

44.     On June 1, 2018, the Company filed a Form 8-K with the SEC, stating that Raymond Akers "has not been fully cooperative" with the Company's review of certain revenue recognition items for prior quarters. The Form 8-K stated, in relevant part:

> **Item 5.02. Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**
>
> On May 27, 2018, Raymond F. Akers, Jr., submitted his written resignation (the "Resignation Letter") from Akers Biosciences, Inc.'s (the "Company") board of directors (the "Board") effective immediately. Dr. Akers did not state in the Resignation Letter that he had any disagreement with the Company. Dr. Akers thereafter delivered a letter, dated May 30, 2018 (the "Disagreement Letter"), setting forth his disagreements with the Company. A copy of the Resignation Letter and the Disagreement Letter are attached hereto as Exhibit 17.1 and Exhibit 17.2 respectively.

The Company believes that Dr. Akers resigned due to his significant differences with other members of the Board regarding the management of the Company, its accounting and business practices and its counsel.

***As previously disclosed the Company's audit committee of the Board has been reviewing certain revenue recognition items with respect to the first quarter of 2018, as well as previous quarters. The Company believes Dr. Akers has not been fully cooperative in connection with such review.***

In accordance with the requirements of Item 5.02(a) of Current Report on Form 8-K, the Company has provided Dr. Akers with the opportunity to furnish the Company as promptly as possible with a letter addressed to the Company stating whether he agrees with the statements made by the Company in response to this Item 5.02 and, if not, stating the respects in which he does not agree.

(Emphasis added.)

45.     That Form 8-K also contained a letter as an exhibit from Raymond, Akers which stated that Dr. Akers "resigned from the Board of Directors due to significant differences regarding the policies and practices of the Board of Directors, accounting and business practices of Management, and new Counsel." The letter stated, in relevant part:

Dear Sirs,

I have resigned from the Board of Directors due to significant differences regarding the policies and practices of the Board of Directors, accounting and business practices of Management, and new Counsel. I believe this to be in the best interests of the Company, shareholders, and me.

Very truly yours,

Raymond F. Akers, Jr., Ph.D.
Co-Founder

46.     On June 5, 2018, the Company filed a Form 8-K/A with the SEC, which amended the Form 8-K filed with the SEC on June 1, 2018. The Form 8-K/A contained as an exhibit a letter on behalf of Raymond Akers, stating that the "8K regarding Ray is false, totally misleading[.]" The letter stated, in relevant part:

On behalf of Ray Akers, we believe the language of the 8K regarding Ray is false, totally misleading, and such that will cause Ray to have to take corrective action.

Ray is a whistleblower; the only reason there is an investigation regarding revenue recognition is because Ray refused to approve the 10K for 2017 and demanded an investigation. To say he is being "uncooperative" is utterly disingenuous and will not be tolerated.

George Bochetto, Esq.
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA 19102
(Ph) 215-735-3900
(Fx) 215-735-2455
www.bochettoandlentz.com

47.     On this news, shares of Akers fell $0.025 or over 5% to close at $0.46 per share on June 6, 2018.

48.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Akers securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest, and all judicial officers who handle this matter and their immediate families.

50.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Akers securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and

can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Akers or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

53.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Akers;

- whether the Individual Defendants caused Akers to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Akers securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

14

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

55.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Akers securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Akers securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

56.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

57.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material

information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants)

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

60.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Akers securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Akers securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

61.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly

and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Akers securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Akers's finances and business prospects.

62.     By virtue of their positions at Akers, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

63.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Akers, the Individual Defendants had knowledge of the details of Akers's internal affairs.

64.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Akers.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Akers's businesses,

operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Akers securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Akers's business and financial condition that were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Akers securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

65.     During the Class Period, Akers securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Akers securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Akers securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Akers securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

66.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

18

67.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

68.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.     During the Class Period, the Individual Defendants participated in the operation and management of Akers, and conducted and participated, directly and indirectly, in the conduct of Akers's business affairs.  Because of their senior positions, they knew the adverse non-public information about Akers's misstatement of income and expenses and false financial statements.

70.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Akers's financial condition and results of operations, and to correct promptly any public statements issued by Akers which had become materially false or misleading.

71.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings that Akers disseminated in the marketplace during the Class Period concerning Akers's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Akers to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Akers

within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Akers securities.

72.     Each of the Individual Defendants, therefore, acted as a controlling person of Akers.  By reason of their senior management positions and/or being directors of Akers, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Akers to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Akers and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

73.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Akers.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

**LITE DEPALMA GREENBERG LLC**

Dated: June 20, 2018

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
Email: bgreenberg@litedepalma.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
           ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile: (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Email: peretz@bgandg.com

*Attorneys for Plaintiff*

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is related to the following action pending in this Court: *Faulkner v. Akers Biosciences, Inc. et al,* Docket No. 2:18-cv-10521 (D.N.J. Jun 13, 2018).

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**LITE DEPALMA GREENBERG LLC**

Dated: June 20, 2018

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Email: bgreenberg@litedepalma.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Email: peretz@bgandg.com

*Attorneys for Plaintiff*
